# In the United States Court of Federal Claims

No. 15-949
Filed: November 30, 2015[1]

| | | |
|---|---|---|
| ******************************************* | * | Administrative Procedures Act ("APA"), 5 U.S.C. § 706; |
| FP-FAA SEATTLE, LLC, | * | Bid Protest Jurisdiction, 28 U.S.C. § 1491; |
| Plaintiff, | * | Competition In Contracting Act, 31 U.S.C. § 3551; |
| v. | * | General Services Administration Regulation, |
| THE UNITED STATES, | * | 48 C.F.R. § 570.306(a), Evaluating Offers, |
| Defendant, | * | 48 C.F.R. § 570.303-4(a), Changes to Solicitations For Offers; |
| and | * | Interested Party |
| DES MOINES CREEK BUSINESS PARK PHASE II, LLC, | * | 28 U.S.C. § 1491(b)(1); Rules of the United States Court of Federal Claims ("RCFC") |
| Defendant-Intervenor. | * | RCFC 57, Declaratory Judgment, RCFC 52.1, Administrative Record. |
| ******************************************* | * | |

**William M. Jack**, Kelley Drye and Warren LLP, Washington, D.C., Counsel for the Plaintiff.

**Robert Mark Norway**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

**Richard J. Conway**, Dickstein Shapiro, LLP, Washington, D.C., Counsel for Defendant-Intervenor.

### MEMORANDUM OPINION AND FINAL ORDER

**BRADEN**, *Judge*.

---

[1] On November 18, 2015, the court forwarded a sealed copy of this Memorandum Opinion And Final Order to the parties to delete any confidential and/or privileged information from the public version, and note any citation or editorial errors requiring correction.

I.     **RELEVANT FACTUAL BACKGROUND.**[2]

    A.     **Solicitation No. 3WA0392.**

       On August 1, 2014, the United States General Services Administration ("GSA") issued a Request For Lease Proposals No. 3WA0392 ("RLP") to provide office space for the United States Federal Aviation Administration ("FAA") within a 10 mile radius of 1601 Lind Avenue, S.W., Renton, Washington.  AR Tab 4, at 59–60; *see also* AR Tab 19, at 2773.

       FP-FAA Seattle, LLC ("FP-FAA"), the plaintiff in this case, currently leases the office space to FAA.  AR Tab 8, at 1064.  The RLP requires that the new FAA office space provides "a maximum of 300,000 rentable square feet (RSF) of space [from] a minimum of 259,500 to 262,100 of American National Standards Institute/Building Owners and Managers Association (ANSI/BOMA) Office Area (ABOA) square feet (SF) [collectively, "ABOA SF"]."[3]  AR Tab 4, at 59.

       The RLP also requires that offerors "demonstrate that the Government's leased premises can be 100% occupied by August 1, 2017."  AR Tab 4, at 82.

       Initial lease proposals were due by October 3, 2014.  AR Tab 4, at 70.

       The August 1, 2014 RLP is a "best-value tradeoff" procurement.  AR Tab 4, at 77 ("The best value tradeoff process permits tradeoffs among price and technical factors, allowing the Government to make an award to other than the lowest priced offeror or other than the highest technically rated Offeror.").  But, the RLP also required that offerors submit proposals that addressed both pricing and technical factors.  AR Tab 4, at 78.  In addition, Offerors were required to submit one proposal in two separate volumes: Volume 1—Technical; and Volume 2—Pricing. AR Tab 4, at 78.

       The award factors for the technical volume of the proposals are listed here in descending order of importance:

    1.  Site Layout and Security;
    2.  Quality of Location;
    3.  Proposed Design Approach and Technical Quality;
    4.  Project Management Plan; and
    5.  Past Performance of Relevant Experience

---

[2] The facts discussed herein were derived from the September 11, 2015 Administrative Record ("AR Tabs 1–103," comprised of pages 1–3796).

[3] ABOA SF differs from Rentable Square Feet in that ABOA SF is "the area where a tenant normally houses personnel and/or furniture[.]"  AR Tab 4, at 100.  Rentable Square Feet is the "area for which a tenant is charged rent[.]"  AR Tab 4, at 100.  Rentable Square Feet is based on and calculated from ABOA SF.  AR Tab 4, at 100 ("Rentable Square Feet is calculated using the following formula for each type of Space (e.g., office, warehouse, etc.) included in the Premises: ABOA SF of Space x (1 + [Common Area Factor]) = RSF.").

AR Tab 4, 77–78.

The RLP required Volume 2 to include the price proposal for the project, including shell rent, real estate taxes, amortization of the tenant improvement allowance, operating services, and any other concessions such as free rent. AR Tab 4, at 78. But, the technical award factors were deemed to be "slightly more important than price." AR Tab 4, at 77.

After the Lease Contracting Officer reviewed the technical and price volumes of the proposals, it was delegated the responsibility to determine which offers should be included in the "competitive range." AR Tab 4, at 78. Next, the Lease Contracting Officer was required to negotiate with offerors in the competitive range. AR Tab 4, at 78. After evaluations, discussions, negotiations apprising offerors as to any weaknesses in their proposals and providing a reasonable determination about corrections, the Lease Contracting Officer would request final proposals from the offerors. AR Tab 4, at 78. The Source Selection Evaluation Board then would evaluate the final proposals and recommend "the proposal that represents the best value to the Government considering technical evaluation factors and price" to the Source Selection Authority. AR Tab 4, at 78.

**B.  The Proposals.**

On October 3, 2014, nine timely proposals were submitted:

1. FP-FAA Seattle, LLC;
2. Des Moines Creek Business Park Phase II, LLC;[4]
3. [REDACTED];
4. [REDACTED];
5. [REDACTED];
6. [REDACTED];
7. [REDACTED];
8. [REDACTED]; and
9. [REDACTED].

AR Tab 19, at 2776–77.

On November 13, 2014, after receiving the offers from the Lease Contracting Officer, the Source Selection Evaluation Board convened and reached a consensus on the technical proposals. AR Tab 19, at 2778. Pricing was not considered. AR Tab 19, at 2778, 2796. Based on the technical evaluations, the Source Selection Evaluation Board recommended [REDACTED], Des Moines, and [REDACTED] to be included in the competitive range. AR Tab 25, at 2908.

On December 11, 2014, after considering the Source Selection Evaluation Board's recommendations, the Lease Contracting Officer deemed four proposals to be in the competitive range—[REDACTED], Des Moines, [REDACTED], and FP-FAA. AR Tab 25, at 2908–09.

---

[4] The Administrative Record refers to Des Moines Creek Business Park Phase II, LLC as "Panattoni Development Company, Inc." or "Panattoni."

The offerors were invited to submit revisions to their Initial Proposal by January 9, 2015 and then, a Final Proposal by February 6, 2015.  AR Tab 30, at 3033 (Dec. 19, 2014 e-mail from CBRE Group ("CBRE"), GSA's broker, to Des Moines); AR Tab 15, at 2616 (Dec. 19, 2014 e-mail from CBRE, GSA's broker, to FP-FAA); Tab 25, at 2880 (April 28, 2015 Source Selection Decision describing the procurement).

### 1.    FP-FAA Seattle, LLC's Proposals.

#### a.    The Initial Proposal.

FP-FAA submitted a timely Initial Proposal on October 3, 2014.  AR Tab 8, at 818.  FP-FAA's Initial Proposal stated that it would fulfill the RLP's requirements through "a phased addition and renovation of [the current office FAA occupies]."  AR Tab 8, at 876.  FP-FAA's initial proposal received a rating of: "Very Good" for its Site Layout And Security; "Acceptable" for the Quality Of Location; "Very Good" for its Proposed Design Approach And Technical Quality; "Marginal" for its Project Management Plan; and "Marginal" for its Past Performance Of Relevant Experience.  AR Tab 19, at 2781–82.  The Source Selection Evaluation Board identified some risk with FP-FAA's plans to renovate its proposed building site.  AR Tab 19, at 2781–82.  Specifically, the Source Selection Evaluation Board stated that FP-FAA's Initial Proposal did "not adequately address impact to [the] tenant occupying the building during major renovation[.]"  AR Tab 19, at 2782.  Overall, the Source Selection Evaluation Board gave FP-FAA's Initial Proposal a rating of "Adequate" with respect to its technical evaluation.  AR Tab 19, at 2796.

#### b.    The Final Proposal.

FP-FAA timely submitted a Final Proposal on February 6, 2015.  AR Tab 8, at 1898.1.  FP-FAA's Final Proposal received a rating of: "Very Good" for Site And Security; "Acceptable" for Quality Of Location; "Very Good" for Proposed Design Approach And Technical Quality; "Marginal" for Project Management Plan; and "Marginal" for Past Performance.  AR Tab 25, at 2955–57.  The Board again expressed concern that FP-FAA did not provide a plan to address the "construction and disruption risk[.]"  AR Tab 25, at 2956.  Specifically, the Source Selection Evaluation Board noted that during a February 17, 2015 oral presentation of FP-FAA's Final Proposal, FP-FAA stated that it "would need concessions from the government relative to the existing lease contract in order to deliver the space under the new lease . . . . [REDACTED]."  AR Tab 25, at 2902.  As such, the Board concluded that FP-FAA "did not adequately address risk to the successful completion of the new construction due to the existing building being occupied."  AR Tab 25, at 2905.

Overall, FP-FAA's Final Proposal ranked third with respect to its technical rating, receiving a technical score of 260.9.  AR Tab 25, at 2885.  FP-FAA's Final Proposal had the lowest price.  AR Tab 25, at 2886.  Its overall rating was "Acceptable."  AR 2955.  FP-FAA's Final Proposal was considered one of the top two proposals.  AR Tab 25, at 2887.

### 2.    Des Moines Creek Business Park Phase II, LLC's Proposal.

#### a.    The Initial Proposal.

Des Moines timely submitted its Initial Proposal on October 3, 2014. AR Tab 9, at 1899. Des Moines' Initial Proposal received a rating of: "Very Good" for its Site Layout and Security; "Acceptable" for its Quality Of Location; "Very Good" for its Proposed Design Approach And Technical Quality; "Acceptable" for its Project Management Plan; and "Marginal" for its Past Performance of Relevant Experience. AR Tab 19, at 2787–88. GSA's broker, CBRE, however, calculated that Des Moines' Initial Proposal exceeded the RLP's maximum ABOA SF requirement by 6.94%. AR Tab 30, at 3034. Overall, Des Moines' Initial Proposal received a rating of "Very Good" from the Source Selection Evaluation Board. AR Tab 19, at 2787.

#### b.    The Final Proposal.

Des Moines timely submitted a Final Proposal on February 6, 2015. AR Tab 9, at 2408. To address CBRE's concern that Des Moines exceeded the maximum ABOA SF requirement, Des Moines included an Area Reduction Tracking Summary, as well as computer-aided design ("CAD") plans to demonstrate compliance with the RLP's ABOA SF requirement. AR Tab 9, at 2436–41.

Des Moines' Final Proposal received a rating of: "Excellent" for Site And Security; "Very Good" for Quality Of Location; "Very Good" for Proposed Design Approach And Technical Quality; "Acceptable" for Project Management Plan; and "Marginal" for Past Performance. AR Tab 25, at 2958–60. Des Moines' Final Proposal received the second highest ranking with respect to pricing. AR Tab 25, at 2896.

Overall, Des Moines' Final Proposal ranked first, with respect to the technical evaluation, receiving a technical score of 335.3. AR Tab 25, at 2885. Des Moines' Final Proposal had the second lowest price. AR Tab 25, at 2886. Des Moines' Final Proposal also received a rating of "Very Good," making it one of the top two proposals. AR Tab 25, at 2887, 2958.

On February 12, 2015, however, CBRE determined that Des Moines' Final Proposal exceeded the maximum ABOA SF requirement by 8,936 SF. AR Tab 28, at 2988–90. Upon review, the Lease Contracting Officer determined that CBRE's calculation was incorrect. AR Tab 83, at 3487. Specifically, the Lease Contracting Officer determined that "[CBRE's calculation] centered around misplacement of polylines on each floor to assist in calculating the square footage, misunderstanding aspects of the space that may be part of an excluded area, and a misunderstanding of the Government's calculation methodology to the standard." AR Tab 83, at 3487. The Lease Contracting Officer concluded that "the difference between the measurements of space was not significant, that CBRE's calculation could have been flawed, and that Des Moines, based upon their revised calculations and supporting documents did not offer any additional space outside the requirements of the RLP." AR Tab 83, at 3487.

## C.     The Award.[5]

On April 28, 2015, the Source Selection Evaluation Board recommended awarding the lease to Des Moines.  AR Tab 25, at 2906–07.  In an April 29, 2015 letter, GSA informed FP-FAA of its intent to award the lease to Des Moines.  AR Tab 25, at 3515.

## II.     RELEVANT PROCEDURAL HISTORY.

### A.     Proceedings Before The Government Accountability Office.

On May 18, 2015, FP-FAA filed a protest with the United States Government Accountability Office ("GAO").  AR Tab 85, at 3492–3522.  FP-FAA protested that, in deciding to award Des Moines the lease, GSA deviated from the stated evaluation criteria, failed to engage in meaningful discussions, evaluated proposals in a disparate manner, and unreasonably evaluated proposals.  AR Tab 85, at 3499.

On June 26, 2015, FP-FAA filed a supplemental protest, arguing that Des Moines' Final Proposal did not conform to the RLP's ABOA SF requirement.  AR Tab 98, at 3647–72.

On July 2, 2015, the Lease Contracting Officer submitted to the GAO a supplemental Statement Of Fact, wherein he explained that "the difference between the measurements of space was not significant, that CBRE's calculation could have been flawed, and that Des Moines, based upon their revised calculations and supporting documents did not offer any additional space outside the requirements of the RLP."  AR Tab 83, at 3487.

On July 7, 2015, GSA filed an Agency Report.  AR Tab 99, at 3673.  On July 13, 2015, Des Moines filed Comments on the Agency Report as an intervenor.  AR Tab 100, at 3706.

On August 26, 2015, the GAO determined that GSA's "evaluation was reasonable and consistent with the evaluation criteria, and that offerors were treated equally."  AR Tab 102, at 3779.  The GAO determined that Des Moines met the 262,100 ABOA SF requirement.  AR Tab 102, at 3787–88.  Therefore, the GAO denied in part and dismissed in part FP-FAA's protest.  AR Tab 102, at 3790.

### B.     Proceedings Before The United States Court Of Federal Claims.

On August 31, 2015, FP-FAA filed a Complaint with the United States Court of Federal Claims under seal ("Compl.").  The Complaint alleged that GSA's intent to award the contract to Des Moines was improper, because Des Moines' proposal failed to adhere to the maximum allowable ABOA SF.  Compl. ¶¶ 3, 28.  In addition, the Complaint requested a temporary restraining order and preliminary injunction, requiring GSA to suspend the lease award to Des Moines.  Compl. ¶ 51(1).  The Complaint also requested a declaratory judgment pursuant to 28

---

[5] Although this is a pre-award bid protest, this case resembles a post-award bid protest, because GSA made an award decision and then issued notice that it "intended" to award the contract to Des Moines.  AR Tab 25, at 3515.

U.S.C. § 2201 *et seq.*[6] and Rule 57 of the Rules of the Court of Federal Claims ("RCFC"),[7] because GSA's "award decision was unreasonable, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  Compl. ¶ 51(2).  The Complaint also requested a permanent injunction and either, the costs of pursuing this action, or bid preparation and proposal costs, pursuant to 28 U.S.C. § 1491(b)(2).[8]  Compl. ¶ 51(5).  On that same day, FP-FAA also filed: a Proposed Redacted Document; a Motion For Temporary Restraining Order; a Motion For Preliminary Injunction; a Sealed Memorandum In Support Of Motion For Temporary Restraining Order And Motion For Preliminary Injunction; a Motion For Leave To File Under Seal The Memorandum And Complaint; a Motion For Protective Order; and a Disclosure Statement.

On September 1, 2015, the court held a telephone status conference. That same day, Des Moines filed an Unopposed Motion To Intervene.

On September 2, 2015, the Government filed a Response To FP-FAA's August 31, 2015 Motion For Protective Order.  That same day, the court granted FP-FAA's August 31, 2015 Motion For Protective Order.

On September 3, 2015, the parties filed a Joint Notice Regarding Preliminary Injunctive Relief And Scheduling ("Joint Notice").  Therein, the Government agreed, at the court's request, to withhold awarding the contract and signing the lease "until the earlier of November 30, 2015 or the Court's resolution of the parties' cross-motions for judgment upon the administrative record."  Joint Notice at 1.  Consequently, FP-FAA withdrew its August 31, 2015 Motion For Temporary Restraining Order and Motion For Preliminary Injunction.  Joint Notice at 1.

---

[6] Section 2201 of the Declaratory Judgments Act, in relevant part, provides that:

> [A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

[7] RCFC 57, in relevant part, provides that, "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate.  The court may order a speedy hearing of a declaratory-judgment action."  RCFC 57.

[8] Section 1491(b)(2) of the Tucker Act, in relevant part, provides, "the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."  28 U.S.C. § 1491(b)(2).

On September 9, 2015, the court entered: a Scheduling Order; an Order Withdrawing FP-FAA's August 31, 2015 Motion For Temporary Restraining Order And Motion For Preliminary Injunction; and an Order Granting Des Moines' September 1, 2015 Motion To Intervene.

On September 11, 2015, the Government filed the Administrative Record under seal.

On September 18, 2015, under seal FP-FAA filed: an Amended Complaint ("Am. Compl."); a Motion For Judgment On The Administrative Record ("Pl. Mot."); and a Memorandum In Support Of Plaintiff's Motion For Judgment On The Administrative Record ("Pl. Mem."). The September 18, 2015 Amended Complaint alleged that, in accepting Des Moines' Final Proposal, GSA had not complied with 48 C.F.R. § 570.306[9] and 48 C.F.R. § 570.303-4.[10] Am. Compl. ¶ 42–45. The September 18, 2015 Amended Complaint also alleged that GSA's decision was arbitrary and capricious. Am. Compl. ¶ 46.

On September 25, 2015, Des Moines filed under seal an Opposition To Plaintiff's Motion for Judgment Upon The Administrative Record, Cross-Motion for Judgment Upon The Administrative Record, And Supporting Memorandum ("Int. Opp."). That same day, the Government filed a Motion To Dismiss, Cross Motion For Judgment Upon The Administrative Record, and Response To FP-FAA's Motion For Judgment On The Administrative Record ("Gov't Mot.") under seal.

On October 2, 2015, FP-FAA filed under seal a Response And Reply ("Pl. Resp.") both to the Government's Cross-Motion and Response and Des Moines' Cross-Motion and Response.

On October 9, 2015, Des Moines filed under seal a Reply To FP-FAA's October 2, 2015 Response To Des Moines' Cross Motion For Judgment Upon The Administrative Record ("Int. Reply"). That same day, under seal the Government filed a Reply In Support Of Its September 25, 2015 Motion To Dismiss And Cross-Motion For Judgment Upon The Administrative Record ("Gov't Reply").

---

[9] Section 570.306 of the General Services Administration Regulation ("GSAR") provides, in relevant part, that "[t]he contracting officer must evaluate offers solely in accordance with the factors and subfactors stated in the SFO [Solicitation For Offers]." 48 C.F.R. § 570.306.

[10] Section 570.303-4 of the GSAR provides, in relevant part, that "[i]f the Government's requirements change, either before or after receipt of proposals, issue an amendment." 48 C.F.R. 570.303-4.

## III.   DISCUSSION.

### A.   Jurisdiction.

Pursuant to 28 U.S.C. § 1491(b)(1), the United States Court of Federal Claims has jurisdiction:

> [T]o render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a *proposed contract* or to a *proposed award* or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement.

28 U.S.C. § 1491(b)(1) (emphasis added).

The September 18, 2015 Amended Complaint alleges that GSA's April 29, 2015 letter of intent, indicating a decision to award the lease to Des Moines was "arbitrary, capricious, and in violation of GSA's regulations."   Am. Compl. ¶ 3.   The United States Court of Federal Claims has jurisdiction to adjudicate allegations by an interested party objecting to a proposed contract or award.   *See* 28 U.S.C. § 1491(b)(1).   Therefore, the court has jurisdiction over the allegations in FP-FAA's September 18, 2015 Amended Complaint.

### B.   Standard Of Review.

Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), the United States Court of Federal Claims is authorized to review challenges to agency decisions, pursuant to the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.   *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *see also Banknote Corp. of Am., Inc. v. United States,* 365 F.3d 1345, 1350 (Fed. Cir. 2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (citations omitted).

When a bid protest is based on a regulatory or procedural violation, *i.e.*, "not in accordance with law," the United States Court of Appeals for the Federal Circuit also has imposed an additional requirement that "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations."   *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (internal quotations and citations omitted).   This burden is even greater when the procurement is a "best value" procurement, as is the case here.   *See Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004) ("[A]s the contract was to be awarded based on 'best value,' the contracting officer had even greater discretion . . . . [T]he relative merit of competing proposals is primarily a matter of administrative discretion.") (citations omitted); *see also TRW, Inc. v. Unisys Corp.*, 98 F.3d

1325, 1327 (Fed. Cir. 1996) ("In determining whether the agency has complied with the regulation authorizing best value procurements, the [reviewing authority] may overturn an agency's decision if it is not grounded in reason.").

If an award decision is challenged, because it was made without a rational basis, the trial court must determine "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (citations and quotations omitted); *see also Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1287 (Fed. Cir. 2010) ("[W]e must sustain an agency action unless the action does not evince rational reasoning and consideration of relevant factors.") (internal alterations, quotations, and citations omitted); *Weeks Marine*, *Inc. v. United States*, 575 F.3d 1352, 1368–69 (Fed. Cir. 2009) ("We have stated that procurement decisions invoke highly deferential rational basis review . . . . Under that standard, we sustain an agency action evincing rational reasoning and consideration of relevant factors.") (citations omitted).

In the alternative, if an award decision is challenged on the grounds that an agency acted in an arbitrary or capricious manner, the court may intervene "only in extremely limited circumstances." *United States v. John C. Grimberg Co., Inc.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983). "Courts have found an agency's decision to be arbitrary and capricious when the agency 'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In this case, the parties have filed Cross-Motions For Judgment On The Administrative Record, requiring the court to conduct a proceeding akin to an expedited trial on the record. *See* RCFC 52.1;[11] *see also Bannum, Inc. v. United States,* 404 F.3d 1346, 1356 (Fed. Cir. 2005) ("[T]he judgment on an administrative record is properly understood as intending to provide for an expedited trial on the record."). The existence of a material issue of fact, however, does not prohibit the court from granting a motion for judgment on the administrative record, although the court has not conducted an evidentiary proceeding. *See Bannum*, 404 F.3d at 1357 (authorizing the court to make "factual findings under RCFC [52.1][12] from the [limited] record evidence as if it were conducting a trial on the record.").

---

[11] RCFC 52.1, in relevant part, provides, "When proceedings before an agency are relevant to a decision in a case, the administrative record of those proceedings must be certified by the agency and filed with the court." RCFC 52.1.

[12] In 2006, RCFC 56.1 "Review of a Decision on the Basis of the Administrative Record" was repealed and replaced with RCFC 52.1, to conform to the United States Court of Appeals for the Federal Circuit's decision in *Bannum*, 404 F.3d at 1354 (holding that the court should "make factual findings from the record evidence as if it were conducting a trial on the record"). *See* RCFC 52.1, 2006 Rules Committee Notes.

C.      **Whether FP-FAA Has Standing.**

1.      **The Government's And Defendant-Intervenor's Argument.**

The Government and Des Moines argue that FP-FAA does not have standing to contest the GSA's decision, because FP-FAA did not have a substantial chance of winning the contract award.  Gov't Mot. at 20; Int. Opp. at 22, 24.

Specifically, FP-FAA's Final Proposal was nonconforming, because it could not meet the RLP's August 1, 2017 occupancy deadline.  Gov't Mot. at 22–23.  In fact, FP-FAA's oral presentation admitted that it "would need concessions from the [G]overnment relative to the existing lease contract in order to deliver the space under the new lease" rendered FP-FAA's Final Proposal nonconforming.  Gov't Mot. at 21 (citing AR Tab 25, at 2902).  Specifically, FP-FAA stated that [REDACTED].  AR Tab 25, at 2903.  Therefore, the Source Selection Evaluation Board concluded that "[FP-FAA] failed to demonstrate its capacity to timely deliver the space as part of their offer."  AR Tab 25, at 2904.  Because FP-FAA's Final Proposal contained material misrepresentations about FP-FAA's ability to meet the August 1, 2017 occupancy date, FP-FAA's Final Proposal was nonconforming and did not have a substantial chance of winning the award.  Gov't Mot. at 22–23.

2.      **FP-FAA's Response.**

FP-FAA responds that it "did not condition its proposal upon obtaining concessions under the existing lease for the [FAA] building."  Pl. Resp. at 3.  FP-FAA's Final Proposal also stated that occupancy would be available "[p]rior to August 1, 2017."  AR Tab 8, at 1898.17.  As for the Source Selection Evaluation Board's statements about FP-FAA's ability to meet the August 1, 2017 deadline, those statements "indicate[] that [GSA] considered [FP-FAA's] existing lease obligations to be a matter of proposal *risk*, not technical acceptability."  Pl. Resp. at 5 (emphasis added).  The Source Selection Evaluation Board's decided that FP-FAA was "one of the top two proposals, with a high technical score and the lowest price of all the offerors."  Pl. Resp. at 6.  Consequently, FP-FAA had a substantial chance of obtaining the contract with standing to challenge the award.  Pl. Resp. at 6.

3.      **The Court's Resolution.**

As a threshold matter, a plaintiff contesting the award of a federal contract must establish that it is an "interested party" to have standing under 28 U.S.C. § 1491(b)(1).  *See Myers Investigative & Sec. Servs.* v. *United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002) ("[S]tanding is a threshold jurisdictional issue[.]").  The United States Court of Appeals for the Federal Circuit has construed the term "'interested party' in section 1491(b)(1) . . . in accordance with the Competition in Contracting Act ("CICA"), 31 U.S.C. §§ 3551–56[.]"  *Rex Serv. Corp.* v. *United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006).  "[T]o come within the [United States] Court of Federal Claims' section 1491(b)(1) bid protest jurisdiction, [the protester] is required to establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest."  *Distrib. Solutions, Inc*. v. *United States,* 539 F.3d 1340, 1344 (Fed. Cir. 2008) (citations omitted).

11

In addition to establishing "interested party" status, a protestor must show that the alleged errors in the procurement were prejudicial. *See Labatt Food Serv., Inc.* v. *United States*, 577 F.3d 1375, 1378–79 (Fed. Cir. 2009) ("It is basic that 'because the question of prejudice goes directly to the question of standing, the prejudice issue must be reached before addressing the merits.'"); *see also Myers*, 275 F.3d at 1370 ("[P]rejudice (or injury) is a necessary element of standing.").

In this case, FP-FAA submitted a proposal in response to the RLP.  AR Tab 8, at 818–1898.  As an actual bidder, FP-FAA satisfies the first element of the "interested party" test. *See Distrib. Sols., Inc.*, 539 F.3d at 1344 ("To qualify as an 'interested party,' a protestor must establish that . . . it was an actual or prospective bidder or offeror[.]").

As to the second element, *i.e.*, that the plaintiff "had a direct economic interest" in the proposed procurement, FP-FAA submitted the lowest price bid and the record shows that FP-FAA was one of the top two bidders.  AR Tab 25, at 2887.  Thus, FP-FAA satisfies the second element of the "interested party" test.  *See United States v. International Business Machines Corp.*, 892 F.2d 1006, 1011 (Fed. Cir. 1989) ("[O]nly the second-lowest bidder is an interested party entitled to protest the award of the contract, . . . because only it stands to receive the contract in lieu of the challenged awardee.") (citation omitted).

As to prejudice, FP-FAA contends that GSA failed to exclude Des Moines' Final Proposal, despite that fact that it was not in compliance with the maximum ABOA SF requirement.  Pl. Mem. at 15 ("Des Moines' proposal should have been eliminated from the competition based on its failure to comply with the material RLP ABOA SF requirement.").  GSA's failure would constitute an error.  As such, the alleged error would prejudice FP-FAA, because "there is a 'substantial chance' [that the plaintiff] would have received the contract award but for the . . . error[] in the bid process." *Bannum,* 404 F.3d at 1358.

For these reasons, the court determines that FP-FAA has standing to seek an adjudication of this bid protest.

### D.   Whether General Services Administration's Contract Award To Des Moines Violated The Administrative Procedures Act.

#### 1.   FP-FAA's Argument.

FP-FAA argues that GSA's decision was arbitrary and capricious under section 706(2)(A) of the Administrative Procedures Act.  First, GSA's acceptance of Des Moines' Final Proposal violated 48 C.F.R. § 570.306[13] and 48 C.F.R. § 570.303-4[14] (collectively, "GSAR

---

[13] Section 570.306 of the General Services Administration Regulation ("GSAR") provides, in relevant part, that "[t]he contracting officer must evaluate offers solely in accordance with the factors and subfactors stated in the SFO [Solicitation For Offers]."  48 C.F.R. § 570.306.

provisions"), because Des Moines improperly offered "approximately" rather than exactly 262,100 ABOA SF. Second, GSA's determination that Des Moines complied with the RLP's ABOA SF requirement did not have a rational basis. Am. Compl. ¶¶ 42–45; *see also* Pl. Mem. at 14–16, 25.

FP-FAA contends that GSA violated the GSAR provisions, because despite the RLP requesting an *exact* amount of ABOA SF, Des Moines' Final Proposal conditioned its offer on an *approximate* amount of ABOA SF. Pl. Mem. at 15–16. The RLP specifically requested a "maximum of 300,000 rentable square feet (RSF) of space yielding a minimum of 259,000 to a maximum of 262,100 of American National Standards Institute/Building Owners and Managers Association (ANSI/BOMA) Office Area (ABOA) square feet (SF)." AR Tab 4, at 59. Yet, Des Moines stated in its Final Proposal that the "offered space . . . will yield *approximately* 262,100 [ABOA SF] as depicted on the plans of the offered space included elsewhere in this Offer." AR Tab 9, at 2499 (emphasis added). The RLP's ABOA SF maximum requirement mandated exact compliance, not an approximation. Pl. Mem. at 17–18. In fact, "the word 'approximately' does not appear anywhere in the RLP's requirement regarding ABOA SF for the building." Pl. Mem. at 19. Because Des Moines improperly conditioned its offer on an approximate ABOA SF estimate rather than an exact ABOA SF calculation, Des Moines' proposal was unacceptable and the decision to award the lease to Des Moines violated the GSAR provisions. Pl. Mem. at 19.

In addition, GSA's decision lacked a rational basis. Pl. Mem. at 22. "[T]he Administrative Record is devoid of any analysis by the Lease Contracting Officer to verify Des Moines' compliance with the ABOA SF requirement." Pl. Mem. at 22. FP-FAA notes that the Lease Contracting Officer did not "identify the space scaling report he reviewed . . . nor did he provide his own calculations of the space offered by Des Moines to verify CBRE's calculations were incorrect." Pl. Mem. at 23. Moreover, the Area Reduction Tracking Summary in Des Moines' final proposal showed "reductions in the *rentable square footage* . . . offered . . ., *not* reductions in *ABOA SF*." Pl. Mem. at 23–24 (emphasis added) (citing AR Tab 9, at 2436 ("Revisions meet the GSA requirement that the ABOA range be between 259,500sf – 262,100sf via a reduction of 18,195sf *Total Rentable Area* to the original submitted building design.") (emphasis added)). The Lease Contracting Officer's statement to the GAO that CBRE miscalculated Des Moines' ABOA SF is not supported by the record. Pl. Mem. at 24. Moreover, the Lease Contracting Officer's statement "runs counter to the overwhelming evidence of Des Moines['] repeated failure to meet the ABOA SF requirement[.]" Pl. Mem. at 25 (citing *Motor Vehicles Ass'n*, 463 U.S. at 43 (defining arbitrary and capricious to include where an agency "has offered an explanation for its decision that runs counter to the evidence before the agency.")).

---

[14] Section 570.303-4 of the GSAR provides, in relevant part, that "[i]f the Government's requirements change, either before or after receipt of proposals, issue an amendment." 48 C.F.R. 570.303-4.

## 2.     The Government's and Defendant-Intervenor's Response.

The Government and Des Moines respond that Des Moines' Final Proposal met the RLP's ABOA SF requirement and did not improperly offer an "approximate amount of space." Gov't Mot. at 2; *see also* Int. Opp. at 1.   Moreover, the Lease Contracting Officer's determination that Des Moines complied with the RLP was rationally based.  Gov't Mot. at 2; *see also* Int. Opp. at 1.

Both the Government and Des Moines contend that Des Moines' Final Proposal met the RLP's ABOA SF requirement exactly.  Gov't Mot. at 26; *see also* Int. Opp. at 28–32.  After being advised that the ABOA SF in Des Moines' Initial Proposal exceeded the RLP's maximum ABOA SF, Des Moines submitted a Final Proposal that:

> (1) [d]isclosed an intent to offer precisely the maximum amount of ABOA office space permitted by the RLP; (2) included an [A]rea [R]eduction [T]racking [S]ummary to assist in GSA evaluation of offered space; 3) submitted detailed drawings identifying specific changes made to reduce the ABOA office space; and (4) included revised CAD drawings with a polyline layer showing how Des Moines measured its space.

AR Tab 9, at 2495, 2430, 2437–41, 2419–29.

Des Moines "expressly notifie[d] GSA . . . that Des Moines ha[d] reduced its floor plans by a total of 18,195 square feet such that Des Moines was now offering to GSA the precise amount of ABOA office space set forth in the RLP."  Int. Opp. at 32.  As such, Des Moines' Final Proposal was not improperly conditioned on an approximate amount of space.  Gov't Mot. at 27; *see also* Int. Opp. at 32.  Des Moines admits that it did state in its Final Proposal that "[t]he offered space includes all of the Rentable Square Footage (RSF) in the Building and will yield *approximately* 262,100 [ABOA SF] *as depicted on the plans* of the offered space included elsewhere in this Offer."  AR Tab 9, at 2499 (emphasis added).  Despite FP-FAA's argument that Des Moines' use of "approximately" was inappropriate, the Government argues that, "as understood by GSA and the GAO, this sentence merely refers the reader to the amount of ABOA space depicted in Des Moines' CAD drawings."  Gov't Mot. at 28.  On that very same page, Des Moines also emphasized that the Final Proposal was "intended to be in full compliance[.]"  Gov't Mot. at 28 (citing AR Tab 9, at 2499).  As such, Des Moines did not improperly condition its offer on an approximate amount of space.  Gov't Mot. at 28; *see also* Int. Opp. at 35.

Finally, both the Government and Des Moines contend that the Lease Contracting Officer's determination that Des Moines' proposal met the ABOA SF requirement had a rational basis.  Gov't Mot. at 29; *see also* Int. Opp. at 35.  In deciding if an agency's procurement decision had a rational basis, the court must determine "whether the contracting agency 'provided a coherent and reasonable explanation of its exercise of discretion.'"  Gov't Mot. at 25 (quoting *Impresa Construzioni*, 238 F.3d at 1333).  Des Moines provided an Area Reduction Tracking Summary for the Lease Contracting Officer to use in calculating "how the reductions affected the ABOA SF[.]"  Gov't Mot. at 30.  Des Moines' spreadsheets corroborated the calculations in the Area Reduction Tracking Summary.  Gov't Mot. at 30 (citing AR Tab 9, at 2430).  This information provided a rational basis for the Lease Contracting Officer to conclude

that CBRE's calculation of Des Moines' Final Proposal was incorrect.  Int. Opp. at 37.  Thus, the Lease Contracting Officer's  "conclusion that the difference between the measurements of space was not significant, that CBRE's calculation could have been flawed, and that Des Moines, based upon their revised calculations and supporting documents did not offer any additional space outside the requirements of the RLP" is supported by the record.  Int. Opp. at 38 (quoting AR Tab 83, at 3487).

### 3.    The Court's Resolution.

An agency's determination lacks a rational basis if the "action does not 'evince [] rational reasoning and consideration of relevant factors.'"  *PAI Corp.*, 614 F.3d at 1351 (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)).  The Administrative Record in several places supports GSA's determination that Des Moines' Final Proposal did not exceed the maximum allowable ABOA SF.  First, in its Final Proposal, Des Moines provided an Area Reduction Tracking Summary, which calculated the exact amount and type of space that Des Moines reduced to conform to the ABOA SF requirement.  AR Tab 9, at 2436.  Second, Des Moines' Final Proposal included CAD drawings that identified the areas reduced.  AR Tab 9, at 2437–41.  Finally, although CBRE conducted an independent calculation and concluded that Des Moines' Final Proposal was "8,936 ABOA SF above the maximum," the Lease Contracting Officer provided a rational basis for determining that CBRE had miscalculated Des Moines' Final Proposal's ABOA SF offering.   AR Tab 27, at 2986.  Specifically, in a supplemental statement submitted to the GAO, the Lease Contracting Officer stated:

> Maria Kobe, CBRE, GSA's National Broker Contractor, requested a space scaling be performed as part of the Government's due diligence.  The report provided to her by her CBRE colleagues indicated more space was provided by the Offeror [Des Moines] than what the Offeror stated on their offer documents.  I reviewed this information and in a conversation with Ms. Kobe, was able to determine that flaws may have existed in how the calculation was performed.  Those centered around misplacement of polylines on each floor to assist in calculating the square footage, misunderstanding aspects of the space that may be part of an excluded area, and a misunderstanding of the Government's calculation methodology to the standard.   In discussing with Ms. Kobe, I came to the conclusion that the difference between the measurements of space was not significant, that CBRE's calculation could have been flawed, and that Des Moines, based upon their revised calculations and supporting documents did not offer any additional space outside the requirements of the RLP.

AR Tab 83, at 3487.[15]

_____

[15] The court recognizes that the Lease Contracting Officer's supplemental statement is a *post hoc* rationalization of his decision.  But, the United States Court of Appeals for the Federal Circuit has stated that "[c]ourts reviewing bid protests routinely consider post-award [] analyses and consider evidence developed in response to a bid protest."  *Turner Const. Co. v. United States*, 645 F.3d 1377, 1386 (Fed. Cir. 2011); *see also Glenn Defense Marine (ASIA), PTE Ltd. v.*

The CAD drawings, the Area Reduction Tracking Summary, Des Moines' representations and calculations as well as the Lease Contracting Officer's analysis all provide a rational basis for GSA's decision. Because the court has found "a reasonable basis for the agency's action, the court should stay its hand even though it might . . . have reached a different conclusion as to the proper administration and application of the procurement regulations." *Weeks Marine*, 575 F.3d at 1371.

But, the court's inquiry does not end with a rational basis review and in this case must proceed with determining whether the agency violated the GSAR provisions. *See PAI Corp.*, 614 F.3d at 1351 (stating that an agency's action may also be arbitrary and capricious if "the procurement procedure involved a violation of regulation or procedure."). If a plaintiff demonstrates that the agency committed an error, then the plaintiff must also show that the error was prejudicial. *See Glenn Defense Marine*, 720 F.3d at 907–08 ("*De minimis* errors in the procurement process do not justify relief. . . . Ultimately, to prevail in a bid protest, the protester must show prejudicial error.") (citations omitted).

The GSAR provisions require GSA to "evaluate offers solely in accordance with the factors . . . stated in the SFO [Solicitation for Offers]." 48 C.F.R. § 570.306. If GSA evaluates offers using factors other than those stated in the SFO, then GSA must "issue an amendment." 48 C.F.R. § 570.303-4. If Des Moines improperly offered space that exceeded the RLP's maximum, then GSA violated the GSAR provisions, because it improperly accepted an offer that did not follow the factors listed in the SFO. The particular statement that allegedly violates the GSAR provisions is as follows, "The offered space includes all of the Rentable Square Footage (RSF) in the Building and will yield approximately 262,100 [ABOA SF] *as depicted* on the plans of the offered space included elsewhere in this Offer." AR Tab 9, at 2499 (emphasis added). Taken in context, the court interprets Des Moines' use of "approximately" as referring to the CAD floor plans, as well as the accompanying Area Reduction Tracking Summary contained in Des Moines' Final Proposal. Thus, the word "approximately" alone does not indicate that Des Moines submitted "a proposal that, on its face, leads 'an agency to the conclusion that an offeror could not and would not comply with [the contract].'" *Centech Group, Inc. v. United States*, 554 F.3d 1029, 1038 (Fed. Cir. 2009) (quoting *Chapman Law Firm v. United States*, 63 Fed. Cl. 519, 527 (2005)). For these reasons, the court has determined that Des Moines did not improperly condition its Final Proposal on an offer of approximate space. Because FP-FAA failed to show that the agency committed an error, the court need not address whether there was prejudice.

---

*United States*, 720 F.3d 901, 911 n. 8 ("All of the materials submitted to the GAO are part of the administrative record before the [United States] Court of Federal Claims.").

**IV.      CONCLUSION.**

      For reasons discussed herein, FP-FAA's September 18, 2015 Motion For Judgment On The Administrative Record is denied.  The Government's and Des Moines' September 25, 2015 Cross-Motions For Judgment Upon The Administrative Record are granted.  Accordingly, the Clerk is directed to enter judgment on behalf of the Government and Des Moines.

      No costs.

      **IT IS SO ORDERED.**

<u>s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Judge**